UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): 25-1321 _____ Caption [use short title] _____

Motion for: Expedited Appeal/Stay

Set forth below precise, complete statement of relief sought:

Plaintiffs respectfully request an expedited briefing schedule

Ramos et al. v. Aviles-Ramos et al.

MOVING PARTY: Plaintiff                    OPPOSING PARTY: Defendant

☒ Plaintiff            ☐ Defendant

☐ Appellant/Petitioner  ☐ Appellee/Respondent

MOVING ATTORNEY: Kenneth Willard, Esq.        OPPOSING ATTORNEY: Muriel Goode-Trufant, Esq.

[name of attorney, with firm, address, phone number and e-mail]

Liberty & Freedom Legal Group                 New York City Law Department

105 East 34th Street, #190, New York, NY 10016   100 Church Street, New York, New York 10007

ken@pabilaw.org/646-850-5035                  NYCFedApp@law.nyc.gov

Court- Judge/ Agency appealed from: Lorna G. Schofield

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
☒ Yes  ☐ No (explain):_____

Opposing counsel's position on motion:
☐ Unopposed ☐ Opposed ☒ Don't Know
Does opposing counsel intend to file a response:
☐ Yes ☐ No ☒ Don't Know

FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:
Has this request for relief been made below?          ☐ Yes ☒ No
Has this relief been previously sought in this court?  ☐ Yes ☒ No

Requested return date and explanation of emergency: _____
_____
_____
_____
_____

Is the oral argument on motion requested?  ☐ Yes ☒ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?  ☐ Yes ☒ No  If yes, enter date:_____

Signature of Moving Attorney:
_____ Date: June 4, 2025 _____ Service : ☒ Electronic ☐ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

# 25-1321

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

——— ◆-◆ ———

CYNTHIA RAMOS, AS PARENT AND NATURAL GUARDIAN OF W.R. AND
CYNTHIA RAMOS, INDIVIDUALLY,

*Plaintiff-Appellant,*

–against–

DAVID C. BANKS, IN HIS OFFICIAL CAPACITY AS CHANCELLOR
OF THE NEW YORK CITY DEPARTMENT OF EDUCATION,
NEW YORK CITY DEPARTMENT OF EDUCATION

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

## PLAINTIFF'S MOTION TO EXPEDITE BRIEFING

---

KENNETH WILLARD
LIBERTY & FREEDOM LEGAL GROUP
105 East 34th Street, Suite 190
New York, New York 10016
(646) 850-5035
ken@pabilaw.org

*Attorneys for Plaintiff-Appellant*

# **TABLE OF CONTENTS**

*Page(s)*

TABLE OF AUTHORITIES .............................................................................. i

PRELIMINARY STATEMENT .......................................................................... 1

LEGAL STANDARD FOR EXPEDITED APPEAL………………………….2

RELEVANT FACTS...………………………………………………………3

FACTUAL AND PROCEDURAL HISTORY….…………………………….4

     W.R. ………………………...………………………………………..5

     C.B. ………………………...…………………………………………..6

     L.S. ………………………………………………………………….7

     R.P. ………………………………………………………………….7

     J.L. ………………………………………………………………….8

     D.O. ………………………………………………………………….8

     The District Court Action……..……………………………………....9

    THERE IS GOOD CAUSE FOR EXPEDITED RESOLUTION
    OF THIS APPEAL.…...…………………………………………………..10

CONCLUSION .......................................................................................... 21

## Table of Authorities

**Cases**

*Am. All. Ins. Co. v. Eagle Ins. Co.,*
 92 f.3d 57 (2d Cir. 1996) ......................................................... 2

*Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz,*
 290 F.3d 476 (2d Cir. 2002) ........................................... 13, 14

*Angamarca v. N.Y.C. Dep't of Educ.,*
 2020 U.S. Dist. LEXIS 48687 (S.D.N.Y. Mar. 20, 2020) ...................................... 15

*Blackman v. D.C.,*
 277 F. Supp. 2d 71 (D.D.C. 2003) ......................................... 20

*Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302,*
 400 F.3d 508 (7th Cir. 2005) ................................................. 11

*Committee of Town of Burlington, Mass.*
 Town of Burlington, Mass., 471 U.S. ..................................... 13

*Cruz v. N.Y.C. Dep't of Educ.,*
 2020 U.S. Dist. LEXIS 49259 (S.D.N.Y. Mar. 20, 2020) ...................................... 16

*Do No Harm v. Pfizer Inc.,*
 126 F.4th 109 (2d Cir. 2025) ................................................. 16

*Doe v. Anrig,*
 728 F.2d 30 (1st Cir. 1984) ................................................... 13

*Doe v. E. Lyme Bd. Of Educ.,*
 790 F.3d 440 (2d Cir. 2015) ................................................. 12

*E. Z.-L. ex rel. R.L. v. New York City Dep't of Educ.,*
 763 F. Supp. 2d 584 (S.D.N.Y. 2011) ................................ 9, 12

*Freedom Commc'ns Inc. v. F.D.I.C.,*
 157 F.R.D. 485 (C.D. Cal. 1994) ............................................. 2

*Frutiger v. Hamilton Cent. Sch. Dist.*,
   928 F.2d 68 (2d Cir. 1991) ....................................................... 13

*Gabel ex rel. v. L.G.*,
   358 F. Supp. 2d 313 (2d Cir. 2005) ........................................ 11

*Honig v. Doe*,
   484 U.S. 305 (1988) ............................................................ 4, 14

*L.J. By & Through Darr v. Massinga*,
   838 F.2d 118 (4th Cir. 1988) ..................................................21

*M.R. v. Ridley Sch. Dist.*,
   744 F.3d 112 (3d Cir. 2014) ................................................... 19

*M.S. ex rel. M.S. v. New York City Dep't of Educ.*,
   734 F. Supp. 2d 271 (E.D.N.Y. 2010) ................................... 16

*Mackey v. Bd. of Educ.*,
   386 F.3d 158 (2d Cir. 2004) ............................. 12, 13, 14, 17

*Mendez v. Banks*,
   65 F.4th 56 (2d. Cir. 2023) ............................................. 17, 19

*Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*,
   86 F. Supp. 2d 354 (S.D.N.Y. 2000) ..................................... 12

*Strother v. S. California Permanente Med. Grp.*,
   79 F.3d 859 (9th Cir. 1996) ................................................... 11

*Student's Pendency Placement. Mackey v. Bd. of Educ.*,
   2003 U.S. Dist. LEXIS 13712 at *35 (S.D.N.Y. 2003) ......... 14

*T.M. v. Cornwall Cent. Sch. Dist.*,
   752 F.3d 145 (2d Cir. 2014) ................................................... 12

*United States v. Delta*,
   925 F.2d 574 (2d Cir. 1991) ..................................................... 2

*United States v. Raimondi*,
   760 F.2d 460 (2d Cir. 1985) ..................................................... 2

*Ventura de Paulino*,

 959 F.3d 519 (2d Cir. 2020) ................................................................ 11, 19

*Wagner v. Bd. of Educ. Of Montgomery Cnty.*,

 335 F.3d 297 (4th Cir. 2003) ............................................................... 11, 19

*Zvi D. by Shirley D. v. Ambach*,

 694 F.2d 904 (2d Cir. 1982) ................................................................ 14, 17

**Statutes**

20 U.S.C. § 4404 ............................................................................................. 3

20 U.S.C. § 1415 ................................... 2, 3, 4, 11, 13, 14, 16, 17, 18, 19, 21

28 U.S.C. § 1657 ........................................................................................ 1, 2

**Other**

34 C.F.R. §300.514 ...................................................................................... 14

Fed. R. App. P. 2 ............................................................................................. 1

Federal Rule of Appellate Procedure 27 .................................................... 23

Rule 27.1 ......................................................................................................... 1

## PRELIMINARY STATEMENT

Pursuant to Fed. R. App. P. 2 and 27, Local Rule 27.1(d), and 28 U.S.C. § 1657(a), Appellants Cynthia Ramos, as Parent and Natural Guardian of W.R., and Cynthia Ramos, Individually; Madeline Grullon, as Parent and Natural Guardian of C.B., and Madeline Grullon, Individually; Cynthia Ramos, as Parent and Natural Guardian of W.R., and Cynthia Ramos, Individually; Maria Hidalgo, as Parent and Natural Guardian of L.S., and Maria Hidalgo, Individually; Adejumoke Ogunleye, as Parent and Natural Guardian of D.O., and Adejumoke Ogunleye, Individually; Cynthia Ramos, as Parent and Natural Guardian of W.R., and Cynthia Ramos, Individually; Rosa Elba de Paulino, as Parent and Natural Guardian of R.P., and Rosa Elba de Paulino, Individually; and Jennie Landsman, as Parent and Natural Guardian of J.L., and Jennie Landsman, Individually (collectively "Appellants"), respectfully submit this Memorandum of Law in support of their emergency motion to expedite their appeal from the District Court's Order dismissing their Amended Complaint and denying their Motion for Preliminary Injunction.

Appellants notified counsel for Appellees of this Motion and the relief requested. Appellees object to the requested relief.

Appellants ask this Court to consider the instant appeal on an expedited basis because an expedited review of the grant or denial of a motion for preliminary injunction is appropriate. Expedited review also is warranted in the context of the

underlying "stay-put" provision of the Individuals with Disabilities Education Act ("IDEA"), which provides, in relevant part: " . . . during the pendency of any proceedings conducted pursuant to this section . . . the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). This procedural right acts as a statutory injunction without the requirement of showing the typical prerequisites of a preliminary injunction.

## LEGAL STANDARD FOR EXPEDITED APPEAL

Consistent with this Court's emphasis on the expeditious resolution of appeals, Congress has allowed federal courts to expedite the consideration of an action for temporary or preliminary injunctive relief, or any other action if "good cause" is shown. 28 U.S.C. § 1657; *Freedom Commc'ns Inc. v. F.D.I.C.*, 157 F.R.D. 485 (C.D. Cal. 1994) (Under § 1657, the court has broad discretion in how to organize its docket. However, certain specific actions are named the highest priority civil actions—habeas corpus actions, recalcitrant witness actions, and actions for preliminary or temporary injunctive relief). *See also Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 f.3d 57, 61 (2d Cir. 1996) ("[C]ourts have an interest in expediting litigation . . . ."); *United States v. Delta*, 925 F.2d 574, 575 (2d Cir. 1991) ("[W]e have an obligation to our Court, to the bar, to all litigants, and to the public to do what we can to administer our caseload expeditiously"); *United States v. Raimondi*, 760 F.2d 460, 461-62 (2d Cir. 1985) ("The prompt and orderly administration of justice has

long been a subject of the most pressing concern for this Court"). As this matter involves the denial of a preliminary/automatic injunction, an expedited appeal is warranted.

## **RELEVANT FACTS**

Appellants are the Parents of six students with disabilities and seek expedited review of the District Court's Order granting Defendants' motion to dismiss and denying Plaintiffs' motion for preliminary injunction. Appellees' failure to continue to fund each Student's placement, including tuition, related services, special transportation, and related tuition late fees and late payment penalties related to transportation funding, at iBRAIN has deprived each Appellant, and each Appellant's Student, of their right to pendency under the "stay-put" provision of the IDEA (20 U.S.C. § 1415(j)), and the regulations promulgated thereunder, and § 4404(4)(a) of the New York Education Law and the regulations promulgated thereunder.

By Opinion & Order dated May 21, 2025, the District Court granted Defendants' motion to dismiss and denied Plaintiffs' motion for preliminary injunction. The District Court erroneously found that several of Plaintiffs' claims were moot or unripe, and erroneously applied the traditional preliminary injunction standard, finding that Plaintiffs could not show irreparable harm. The District Court failed to consider long-standing precedent from the Supreme Court and Second

3

Circuit, as well as other circuits, holding that the IDEA's stay-put provision results in an automatic injunction without regard to traditional factors such as irreparable harm.

Appellants request that this Court expedite its review of this appeal.

## FACTUAL AND PROCEDURAL HISTORY

On July 2, 2024, each Parent filed a DPC stating in pertinent part that: (1) DOE did not offer their respective child a FAPE for the 2024-2025 extended school; (2) each Parent's unilateral placement or continued placement of their respective Student at iBRAIN was appropriate; and (3) equitable considerations favored an award of full tuition payment directly to each Student's educational program/placement and their related service providers. In addition, each Parent's DPC requested an order requiring DOE to fund each Student's educational program/placement during the pendency of the due process proceedings relative to each Student's DPC for the 2024-2025 school year, as required by 20 U.S.C. § 1415(j).

In early August, Parents' counsel sent DOE an email along with copies of all the documentation needed to determine each Student's pendency program/placement—copies of each Student's Ten-Day Notice, Pendency Implementation Form, the basis for pendency, a Proposed Order of Pendency, the

iBRAIN enrollment contract, the Sister's Transportation Agreement, and their Nursing Service Agreement, where applicable.

Each Parent received a favorable decision from an IHO or a State Review Officer ("SRO"), which held that DOE denied them a FAPE, determined that iBRAIN was an appropriate placement, and found that equitable considerations favored total funding or reimbursement, as follows.

**W.R.**

On January 18, 2024, the SRO issued Decision No. 23-166, holding that DOE failed to offer the Student a FAPE for the 2023-2024 school year; that iBRAIN was an appropriate private placement; and that the equities favored the Parent. DOE did not appeal this decision, and its time within which to do so has expired. Thus, SRO Decision No. 23-166 establishes iBRAIN and the attendant related services as W.R.'s "current educational placement," as well as her "pendency placement" until such time as there is an "agreed upon" change in placement, either through agreement between the parties or the entry of a Final Order.

Thereafter, on July 2, 2024, the Parent filed a DPC and sought a pendency order continuing W.R.'s placement at iBRAIN. On August 20, 2024, in IHO Case No. 277110, the IHO entered a Pendency Order continuing W.R.'s placement at iBRAIN for the 2024-25 school year but, inexplicably—contrary to the pendency-establishing SRO Decision No. 23-166, and notwithstanding the proof presented that

Plaintiff had already contracted with Sisters Transportation for the 2024-2025 school year—ordered DOE to provide transportation services to W.R. for the 12-month 2024-25 school year.[1]

On October 15, 2024, the IHO entered a Findings of Fact and Decision ("FOFD"), finding that DOE had once again failed to offered W.R. a FAPE for the 2024-25 school year but, *inter alia*, reducing by 50% the amounts owed for tuition and nursing, as well as transportation services already used and billed as due on July 2, 2024 and September 2, 2024, and directing DOE to provide transportation for W.R. to iBRAIN for the remainder of the school year. On appeal the SRO entered SRO Decision No. 24-543, upholding the IHO's 50% reduction, but reversing the direction of DOE to provide transportation, instead ordering DOE to fund transportation costs pursuant to the contract with the provider, albeit with a 50% reduction.

**C.B.**

A pendency order and FOFD were issued on September 9, 2024, by IHO Kiran Gill, confirming that DOE must directly fund both tuition and transportation for the 2024-2025 school year. DOE has paid tuition and transportation, with the exception of late fees under the relevant contracts, which DOE disputes and has not made any payments toward.

---

[1] It is noteworthy that DOE has never provided W.R. with any transportation.

**L.S.**

Pendency has been established through IHO Ritter's FOFD dated September 15, 2023, Case No. 251061, ordering DOE to fully fund L.S.'s placement at iBRAIN for the 2023-24 school year, inclusive of transportation costs and nursing services. DOE failed to appeal IHO Ritter's decision, and its time within which to do so has expired.

On July 2, 2024, the Parent filed a DPC alleging that DOE had once again failed to offer L.S. a FAPE for the 2024-25 school year (IHO Case No. 277282). With respect to pendency, the IHO determined that pendency was being contested by DOE; however, she opined that she could not issue a Pendency Order as the matter was being adjudicated in a federal action seeking a preliminary injunction on pendency.[2] DOE still has outstanding payments due and owing for tuition, transportation and nursing services, and disputes owing, and has not paid, late fees under each of the relevant contracts.

**R.P.**

IHO Harold Hinds issued a pendency order on August 20, 2024, confirming DOE's obligation to fund tuition and related services, including transportation, as outlined in the unappealed FOFD in Case No. 228467, dated March 13, 2023. DOE

---

[2] By FOFD dated May 16, 2025, the IHO found that DOE offered a FAPE for the 2024-2025 school year, and that Parent was entitled to no relief.

has not paid tuition to iBRAIN, and it has not paid outstanding tuition late fees accrued per the iBRAIN contract with Parent. Further, DOE has failed to provide the required transportation services.

### J.L.

IHO Richard A. Liese issued a pendency order on September 9, 2024, directing DOE to pay for tuition, transportation, and nursing services for the 2024-2025 school year. Although DOE has paid tuition, transportation and nursing services, it disputes owing late fees under the relevant contracts and therefore has not fully paid these amounts due and owing for the 2024-25 school year.

### D.O.

D.O.'s pendency at iBRAIN was first established by the FOFD issued by IHO Peyser in which she held that iBRAIN was the appropriate placement for D.O. for the 2020-2021 school year and ordered DOE to fund the full cost of D.O.'s tuition at iBRAIN, including related services, and the cost of DOE's special transportation. DOE did not appeal this decision and the time within which to do so has expired.

On August 25, 2023, IHO Arocho issued an order on pendency in IHO Case No. 251168, which continued D.O.'s pendency placement at iBRAIN for the 2023-2024 school year, inclusive of transportation costs, pending a final resolution of this matter. On December 5, 2023, IHO Arocho entered an FOFD finding that, for the 2023-24 school year, DOE had again failed to offer D.O. a FAPE and ordered that

DOE continue full funding of iBRAIN, inclusive of transportation and nursing services. DOE has paid tuition, transportation and nursing services for the 2024-25 school year, but has failed to pay late fees in accordance with the several relevant contracts.

Here, each Student was re-enrolled at iBRAIN for the 2024-2025 school year as iBRAIN is each Parent's last agreed-upon educational placement—and each Student's then-current educational placement when their DPC was filed. The filing of each Parent's DPC on July 2, 2024, triggered DOE's obligation to fund each Student's pendency placement from that date forward. *See E. Z.-L. ex rel. R.L. v. New York City Dep't of Educ.*, 763 F. Supp. 2d 584, 599 (S.D.N.Y. 2011), *aff'd sub nom. R.E. v. New York City Dep't of Educ.*, 694 F.3d 167 (2d Cir. 2012) ("If the student's current educational placement is in private school, the responsibility for private school tuition 'stays put' as well. Thus, where, as here, the school district has been paying for a child's private school tuition, it must continue to do so until the moment when the child's educational placement changes") (internal citations and quotation marks omitted).

### The District Court Action

On September 18, 2024, Parents filed an Amended Complaint against DOE, alleging that DOE has failed to implement each of the six Students' pendency placements, in violation of the binding administrative orders for each of the six

Students. To date, DOE has failed or refused to fully fund each Student's pendency placement at iBRAIN, including tuition, tuition late fees, related services, nursing services (where applicable), and transportation services, including accrued late payment penalties.

On October 4, 2024, DOE filed a motion to dismiss, arguing that several of Parents' claims were moot or unripe, and that Parents were not entitled to expedited payment. On October 18, 2024, Parents filed a motion for preliminary injunction.

On May 21, 2025, the District Court entered an Opinion & Order granting DOE's motion to dismiss and denying Parents' motion for preliminary injunction.[3] The District Court found that Parents' claims were either moot or unripe. The Court found further that Parents had not shown irreparable harm, and thus were not entitled to injunctive relief. Parents timely appealed the same day, and now seek expedited review by this Court.

## THERE IS GOOD CAUSE FOR
## EXPEDITED RESOLUTION OF THIS APPEAL

In this case, each IHO conducted a hearing with regard to the Students' pendency placements, as requested in their respective DPCs. DOE has failed to meet its burden to provide Students with an appropriate alternative pendency placement

---

[3] The District Court addressed this case together with Case No. 24 Civ. 5136 (LGS), which involved six different iBRAIN students. Because these are separate cases involving different students, Parents here appeal the Opinion & Order only as applied to them.

for the 2024-2025 school year. DOE has failed and continues to fail to both fund and comply with the pendency-establishing administrative orders for each Student. In denying Parents' request for a preliminary/automatic injunction requiring DOE to comply with the administrative orders and abide by the terms of the IDEA's pendency provision, the District Court has all but sanctioned the contempt that DOE has shown for the administrative orders and the pendency process itself. Without the requested relief, Students, in essence, are left without a pendency placement; a private placement without payment is no placement at all—financing goes hand in hand with the pendency placement. A student without a pendency placement is "an impossible result." *Gabel ex rel. v. L.G.*, 358 F. Supp. 2d 313, 325 (2d Cir. 2005).

The IDEA's "Pendency Provision," codified at 20 U.S.C. § 1415(j), functions as an automatic preliminary injunction ***without regard*** to factors such as irreparable harm or likelihood of success on the merits. *Ventura de Paulino v. New York City Dep't of Educ.,* 959 F.3d 519 (2d Cir. 2020), *cert. denied*, 208 L. Ed. 2d 534, 141 S. Ct. 1075 (2021), *reh'g denied*, 209 L. Ed. 2d 26, 141 S. Ct. 1530 (2021)*; Strother v. S. California Permanente Med. Grp.,* 79 F.3d 859 (9th Cir. 1996), *as amended on denial of reh'g* (Apr. 22, 1996), *as amended on denial of reh'g* (June 3, 1996); *Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*, 400 F.3d 508, 511 (7th Cir. 2005) (comparing a stay-put injunction to an automatic stay in a bankruptcy case); *Wagner v. Bd. of Educ. Of Montgomery Cnty.*, 335 F.3d 297, 301 (4th Cir.

2003)(noting that an "injunction is automatic").

"Stay-put" interim relief requires that a school district keep funding a disabled student's then-current educational placement until the administrative and judicial proceedings are complete.[4] *See Doe v. E. Lyme Bd. Of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015); *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 171 (2d Cir. 2014); *E.Z.-L. ex rel. R.L. v. New York City Dep't of Educ.,* 763 F. Supp. 2d 584, 599 (S.D.N.Y. 2011), *aff'd sub nom. R.E. v. New York City Dep't of Educ.,* 694 F.3d 167 (2d Cir. 2012). Under the IDEA, a claim for tuition funding under the stay-put provision is evaluated independently of the claim for tuition reimbursement due to the inadequacy of an IEP. *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 86 F. Supp. 2d 354, 357 (S.D.N.Y. 2000), *aff'd*, 297 F.3d 195 (2d Cir. 2002), citing *Zvi D. by Shirley D.*, 694 F.2d 904 ("[20 U.S.C. § 1415 (j) represents] Congress' policy choice that all handicapped children, *regardless of whether their case is meritorious or not*, are to remain in their current educational placement until the dispute concerning their placement is ultimately resolved."); *see also Mackey ex rel. Thomas M.*, 386 F.3d at 160-161 (citing *Susquenita Sch. Dist. V. Raelee S. By & Through Heidi S.*, 96 F.3d 78, 83 (3d Cir. 1996)).

---

[4] "This provision aims to preserve public funding for an educational placement 'consented to by the parent before the parent requested a due process hearing. To cut off public funds would amount to a unilateral change in placement, prohibited by the Act." *Mackey ex rel. Thomas M*., 386 F.3d at 163 (*quoting Zvi D. by Shirley D.* v. *Ambach*, 694 F.2d 904, 906 (2d Cir. 1982)).

Under § 1415(j), there are only two ways that a pendency placement could be changed from the District's proposed school: by further agreement of the District and the parents or by a decision by an IHO or SRO. In *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 484 (2d Cir. 2002), the Court held that "once the parents' challenge [to a proposed IEP] succeeds…consent to the private placement is implied by law, and the requirements of § 1415(j) become the responsibility of the school district." *See also Mackey ex rel. Thomas M.*, 386 F.3d at 163. If a placement is challenged and the state administrative bodies fail to render expeditious decisions about a child's educational placement, § 1415(e)(2) empowers the district court to assume jurisdiction over the review process and render a final determination. *Frutiger v. Hamilton Cent. Sch. Dist.*, 928 F.2d 68, 73-74 (2d Cir. 1991).

Once the pendency placement is established, DOE is legally obligated to continue making payments to preserve the student's status-quo educational placement. *Doe v. Anrig*, 561 Supp. 121, 130 (D. Mass. 1983), *aff'd*, 728 F.2d 30 (1st Cir. 1984), and *aff'd in part, rev'd in part sub nom. Town of Burlington v. Dep't of Educ. for Com. Of Mass.*, 736 F.2d 773 (1st Cir. 1984), *aff'd sub nom. Sch. Comm. of Town of Burlington, Mass v. Dep't of Educ. of Mass.*, 471 U.S. 359, 105 S. Ct. 1996, 85 L. Ed. 2d 385 (1985), cited by *School Committee of Town of Burlington, Mass.*, 471 U.S. at 366.

Section 1415(j) represents Congress' policy choice that all disabled children,

regardless of whether or not their case is meritorious, are to remain in their current educational placement until the dispute about their placement is ultimately resolved. *Zvi D. by Shirley D.,* 694 F.2d 904 (2d Cir. 1982)*; Mackey ex rel. Thomas M.*, 386 F.3d 158, 160-161 (2d Cir. 2004) (emphasis supplied, internal quotation marks omitted), citing *Susquenita School District.*, 96 F.3d at 83, cited with approval in *Board of Educ. of Pawling Central School Dist.*, 290 F.3d at 484.

The provision aims to provide a student with stability and consistency in their education while the proceedings occur. *Honig v. Doe*, 484 U.S. 305, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988). However, if DOE's proposed placement is unavailable or DOE has failed to provide a Pendency placement, and the student has been unilaterally placed in a private school, issues arise as to who must pay for the placement. *Zvi D. by Shirley D.*, 694 F.2d at 906. Under federal regulations, the student's current placement may be changed upon agreement between the parties and the local agency. 20 U.S.C. § 1415(j), (7); 34 C.F.R. §300.514(a).

For those students without an agreement, courts have found that the placement functioning at the moment the administrative proceedings began is the Student's Pendency Placement. *Mackey v. Bd. of Educ.,* 2003 U.S. Dist. LEXIS 13712 at *35 (S.D.N.Y. 2003), citing *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 867 (3d Cir. 1996). Without an alternative appropriate pendency placement, Plaintiff-Students' operative placements at the time the DPCs were filed become Plaintiff-

14

Students' pendency placements, as each IHO correctly found. To maintain the *status quo* and to ensure Students remain in that private school placement during the pendency of the administrative and judicial proceedings relative to the DPCs, the DOE ***must*** fund the Students' placement in accordance with the Pendency Orders, and where a Pendency Order has not been issued, the uncontested pendency placements.

The District Court dismissed several of the Students' claims as moot because pendency was either fully or partially paid by the DOE for the 2024-25 school year. For certain of these Students, however, DOE continues to dispute that pendency lies at iBRAIN by virtue of failing to fully pay on pendency orders or the underlying final and binding administrative orders. The District Court dismissed certain other Students' claims on the basis that pendency orders had already issued, mooting the need for a declaratory judgment that pendency lies at iBRAIN. However, like the claims that had been dismissed for full or partial payment, the DOE continues to dispute pendency for certain of these claims as well.

For the claims that had been dismissed for full or partial payment, at least three of the students have substantial outstanding balances that still have not been paid despite the end of the school year rapidly approaching (*i.e.* the year ends on June 26, 2025) and with another round of disputes looming. Courts have routinely rejected IDEA claims as moot where payment is still outstanding. *See Angamarca v. N.Y.C.*

*Dep't of Educ.*, 2020 U.S. Dist. LEXIS 48687, at *9 (S.D.N.Y. Mar. 20, 2020); *see also Cruz v. N.Y.C. Dep't of Educ.*, 2020 U.S. Dist. LEXIS 49259, at *24 (S.D.N.Y. Mar. 20, 2020); *see also M.S. ex rel. M.S. v. New York City Dep't of Educ.*, 734 F. Supp. 2d 271, 273 (E.D.N.Y. 2010).

With the 2024-25 school year nearly at an end and substantial payments for W.R., L.S. and R.P still outstanding, the urgency of this case is immediately apparent. This is not a case where the DOE has simply lagged in payment for several months in the middle of the school year. In some instances, the payments still outstanding have never been made. In others, the missing payments are substantial. With the school year rapidly coming to a close, these missing payments jeopardize the placement of these Students as a new school year starts without the 2024-25 school year being fully paid out.

For the claims that the District Court had determined were mooted by relevant pendency orders, the District Court, citing *Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 121 (2d Cir. 2025), reasoned that it lacked the jurisdiction to decide the issue of pendency as that was a determination that still had to be made at the administrative level. This determination leads to an impossible situation where, every year, the DOE is allowed to postpone the determination of what constitutes pendency, and therefore necessarily the payments that are due under 20 U.S.C. § 1415(j), under cover of a manufactured dispute when the relevant pendency orders are clear, or

caselaw clearly gives the court the authority to award the requested relief.

This leads to an endless attenuation of payments, and disputes that proliferate on a year-over-year basis, where pendency payments are unnecessarily delayed and Students are denied their basic pendency rights under § 1415(j). *See Zvi D. by Shirley D*., 694 F.2d 904 ("[20 U.S.C. § 1415 (j) represents] Congress' policy choice that all handicapped children, *regardless of whether their case is meritorious or not*, are to remain in their current educational placement until the dispute concerning their placement is ultimately resolved."); *see also Mackey ex rel. Thomas M*., 386 F.3d at 163 ("To cut off public funds would amount to a unilateral change in placement, prohibited by the Act.")(quoting *Zvi D. by Shirley D*., 694 F.2d at 906).

By refusing to rule on the outstanding question of what constitutes pendency under the relevant pendency orders, Students are denied their basic pendency rights under the IDEA. As this Circuit Court recognized in *Mendez v. Banks*, 65 F.4th 56 (2d Cir. 2023), "§ 1415(j) functions as an 'automatic injunction,' with no requirement to show irreparable harm in order to maintain an educational placement, and (2) 'funding goes hand-in-hand with placement.'" *See Mendez*, 65 F.4th at 62. Although the Circuit Court ultimately found that there was no entitlement to a "fast-tracked" payment under § 1415 (j), *Mendez* did not disturb the first two foundational principles.

By denying a decision on what constitutes pendency on the asserted basis of

a lack of jurisdiction, the District Court has deprived these Students of the automatic injunctive effect of § 1415(j) and "hand-in-hand" funding that that this Court reaffirmed in *Mendez*. This necessarily jeopardizes the placement of these Students as some have not received any payment, or only partial payment, for the 2024-25 school year, which is quickly drawing to a close, while others will begin entering the new year with yet another round of disputes looming and no firm decision either way on what constitutes pendency.

Moreover, Plaintiffs are entitled to a determination of what constitutes pendency, not only in terms of determining the parameters of what is owed with or without a pendency order in place, but in those instances where DOE has continued to dispute owing certain payments. DOE specifically disputes owing late fees according to the relevant contracts, thus creating a *de facto* dispute on what constitutes pendency. This is particularly pronounced where the relevant pendency orders or final and binding administrative orders base reimbursement on the contracts or "costs" of the Parent throughout the 2024-25 school year. In addition, for W.R., L.S. and R.P., DOE has either failed to make any payments to certain of the constituent component costs of the relevant pendency order or final administrative order, *i.e.* tuition, transportation or nursing services, or it continues to delay payment for these constituent component costs under the relevant order. By delaying or denying payment altogether, DOE is engaged in a *de facto* dispute of

pendency.

The Third Circuit recognized that without pendency funding for a private placement, "a parent's 'choice' to have his child remain in what the state has determined to be an appropriate [] placement amounts to no choice at all." *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 123 (3d Cir. 2014). There is no separate requirement of a court finding of appropriateness; rather, the obligation arises automatically from a determination that the private school is the protected *status- quo* while the dispute resolution process is ongoing. *Id*. Here, the *status quo* for Students was the education and related services received at iBRAIN.

Therefore, as a result of DOE's failure to make any payment of late fees, as well as the failure to make full or even partial payments for the constituent components of the pendency orders or relevant administrative order for certain other Students, in combination with the District Court's refusal to consider these issues, Plaintiffs are denied the "automatic injunction" of § 1415(j). *See* 65 F.4th at 62; *see also Wagner*, 335 F.3d at 301; *see also Ventura de Paulino,* 959 F.3d at 529 ("But where the IDEA's stay-put provision is implicated, the provision triggers the applicability of an automatic injunction designed to maintain the child's educational status quo while the parties' IEP dispute is being resolved.").

Plaintiffs are entitled to an immediate determination of what constitutes pendency, including not only late fees due and owing under the several, relevant

contracts, but disputed constituent amounts ordered by the relevant pendency order or administrative order. This is particularly pronounced in the case of late fees as they have been accruing throughout the year, and now that the 2024-25 school year is coming to an end, none of those fees have been paid. The same is no less true of the constituent component parts of the relevant pendency or administrative orders that DOE has either completely refused to pay, or failed to fully pay, as the school year comes to a close.

As to the District Court's denial of Plaintiffs' Motion for a Preliminary Injunction, it is true that Students are not currently suffering the full extent of the irreparable harm stemming from the school system's continued failure and/or inability to provide them with a FAPE because iBRAIN has allowed the Students to remain in the school. However, there is no guarantee that the school will continue to carry the Students in the future, or that the school can sustain itself without payment from the Parents or pendency payments from DOE. In the case of *Blackman v. D.C.*, 277 F. Supp. 2d 71, 80 (D.D.C. 2003), the court found that "children cannot be denied of their substantive right to a free appropriate public education under the IDEA because they are fortunate enough to have parents who can afford to fund their education in private schools while waiting." Similarly, children cannot be denied their substantive right to a FAPE under the IDEA just because they are fortunate enough to have had their placements preserved at their private school…so far.

Requiring the DOE to implement the pendency orders poses no harm to DOE, since the school system is obligated by law to provide Students with a FAPE, no matter in what arena. Even if the school system is forced to spend more money than originally planned, this minor harm must be "balanced against the emotional, psychological and physical" damage to this student, which is irreparable—whether it be the psychological toll exacted or dismissal from the school. *L.J. By & Through Darr v. Massinga*, 838 F.2d 118 (4th Cir. 1988), abrogated *by Suter v. Artist M.*, 503 U.S. 347, 112 S. Ct. 1360, 118 L. Ed. 2d 1 (1992). These crucial factors outweigh any expenditure of funds.

Lastly, while not addressed here, Plaintiffs maintain they can and have met the traditional factors associated with a preliminary injunction.

## <u>CONCLUSION</u>

In light of the preceding, Plaintiffs request that this court grant them an expedited appeal and briefing schedule as follows:

| | |
|---|---|
| **Plaintiffs' Principal By:** | June 12, 025 |
| **Defendants' Brief in Response By:** | June 19, 2025 |
| **Plaintiffs' Reply Brief By:** | June 23, 2024 |

Plaintiffs request this Court issue a Preliminary/Automatic Injunction under 20 U.S.C. § 1415(j)—upholding and enforcing Pendency Orders and where a Pendency Order has not been issued, to implement the agreed pendency placements,

to preserve and maintain Students' educational placements at their private school.


Dated: June 4, 2025
New York, NY


                                        Respectfully Submitted,
                                         /s/ *Kenneth Willard*
                                        Kenneth Willard, Esq.
                                        Liberty & Freedom
                                        Legal Group
                                        *Attorneys for Plaintiffs*
                                        105 East 34th Street, Suite 190
                                        New York, New York 10016
                                        ken@pabilaw.org

## CERTIFICATE OF COMPLIANCE

The within motion seeking a preliminary injunction pending appeal complies with the requirements of Federal Rule of Appellate Procedure 27(d)(2)(A) in that it does not exceed 5,200 words.

Dated: June 4, 2025
New York, NY

Respectfully Submitted,
/s/ *Kenneth Willard*
Kenneth Willard, Esq.
Liberty & Freedom
Legal Group
*Attorneys for Plaintiffs*
105 East 34th Street, Suite 190
New York, New York 10016
ken@pabilaw.org